# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4159

_____

Owner-Operator Independent Drivers Association, also known as OOIDA; Scott Mitchell

*Petitioner*s

v.

United States Department of Transportation; Federal Motor Carrier Safety Administration; United States of America

*Respondent*s

_____

Department of Transportation, National Transportation Safety Board

_____

Submitted: November 15, 2017
Filed: January 5, 2018

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Anyone who has undergone sleep apnea testing knows it is expensive, time-consuming, and unpleasant. Owner-Operator Independent Drivers Association, Inc. ("OOIDA") and Scott Mitchell (a member of OOIDA) allege that a new administrative rule means that OOIDA members are being subjected to more of these onerous tests, which in turn has led to delays, or worse, denials of medical certification to drive commercial motor vehicles ("CMV"). They petition us, an

Article III court, to vacate the rule. As an initial step, they must—among other things—offer evidence that the challenged rule has caused the harm they allege. OOIDA and Mitchell have not taken that step. In other words, they have not proven standing to invoke our jurisdiction, and we therefore dismiss the petition.

I.

Congress delegated authority to the Department of Transportation ("DOT") to "establish, review, and revise . . . medical standards for operators of [CMVs] . . . and requirements for periodic physical examinations of such operators." 49 U.S.C. § 31149(c)(1)(A). The Federal Motor Carrier Safety Agency ("FMCSA"), an agency within the DOT, has long been in charge of exercising that delegated authority. See e.g., Medical Certification Requirements as Part of the CDL, 73 Fed. Reg. 73,096, 73,096 (Dec. 1, 2008) ("The FMCSA is required by statute to establish standards for the physical qualifications of drivers who operate CMVs in interstate commerce.").

Pursuant to that delegated authority (and others), the FMCSA promulgated a final rule entitled "Medical Examiner's Certification Integration." 80 Fed. Reg. 22,790 (April 23, 2015) ("Rule").[1] The thrust of the Rule is efficiency: FMCSA wanted medical examiners to deliver the results of their examination quicker and electronically in order to ensure better coordination between the state and federal agencies that regulate CMV drivers. As part of that effort, the Rule revised, and made mandatory, the Medical Examination Report Form ("Revised MER Form") used to evaluate CMV drivers. The Revised MER Form contained additional questions, including a question asking the driver whether he or she has ever been tested for sleep apnea. It also no longer contained detailed guidance for medical

---

[1]The FMCSA later issued corrections to the Rule. See Medical Examiner's Certification Integration; Correction, 80 Fed. Reg. 35, 577 (June 22, 2015). None of those corrections impact our decision here.

-2-

examiners.  Instead, the Advisory Guidance that used to be attached to the MER Form was moved to an Appendix in the Code of Federal Regulations.

OOIDA and Mitchell petitioned the FMCSA for reconsideration of the Rule. After the petition was denied, pursuant to 28 U.S.C. § 2342(3)(A), they filed for review of the Rule in this court, arguing that its promulgation violated the Administrative Procedure Act and other statutory requirements.  They assert that due to the Rule "OOIDA members have suffered real, personalized harm" because they "have been subjected to unnecessary and expensive testing . . . particularly in connection with sleep disorders" and such testing has led to denials of medical certification to drive CMVs in some cases.

The Government's primary contention is that both OOIDA and Mitchell lack standing to bring this claim.  We begin, and end, there.

## II.

### A.

Article III commands that federal courts intervene only in "Cases" or "Controversies."  U.S. Const., Art. III, § 2.  Standing is a doctrine that illuminates the contours of our constitutional authority by "identify[ing] those disputes which are appropriately resolved through the judicial process."  Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  Because of this, it is axiomatic that a party seeking to litigate in federal courts must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).[2]

---

[2]An entity like OOIDA may only bring this claim under the "associational standing" doctrine.  See Hunt v. Washington State Apple Advert. Comm'n, 432 U.S.

Direct appellate review of administrative action—as is requested here—does not alter the requirements of standing. See John G. Roberts, Jr., Article III Limits on Statutory Standing, 42 Duke L.J. 1219, 1226 (1993) ("[T]he conclusion [reached by the Supreme Court] that Article III limits congressional power can hardly be regarded as remarkable"). Thus, we have said that "parties seeking direct appellate review of an agency action must prove each element of standing as if they were moving for summary judgment in a district court." Iowa League of Cities v. EPA., 711 F.3d 844, 869 (8th Cir. 2013). Just like at the summary judgment stage, we look for "specific facts supported by affidavit or other evidence." Owner-Operator Indep. Drivers Ass'n, Inc. v. Dep't of Transportation, 831 F.3d 961, 966 (8th Cir. 2016) ("OOIDA I"). Simply put, there must be a "preponderance of the evidence" that the elements of standing have been met. Iowa League of Cities, 711 F.3d at 870 (internal quotation marks omitted).

B.

Here, OOIDA and Mitchell have not provided any evidence to support the second element of standing: causation.

OOIDA and Mitchell refer us to two affidavits to prove they have standing.[3] Cf. OOIDA I, 831 F.3d at 966 ("The elements of standing cannot be inferred argumentatively from averments in the pleadings" (internal quotation marks omitted)). The first affidavit from the Chief Executive Officer of OOIDA, James Johnston, contains generalized allegations of the types of harm that could stem from the Rule—a far cry from the "specific facts," id., we look for to support standing. It also refers, however, to the second affidavit—provided by Dale Watkins, another

_____

333, 343 (1977). As a preliminary matter, it must first show "its members would otherwise have standing to sue in their own right"—or put another way, it must show that one of its members has individual standing. Id. Because they have not made this showing, we do not delve into the other requirements of "associational standing."

[3]Mitchell did not submit an affidavit from himself.

-4-

OOIDA employee ("Watkins Affidavit")—for documentation of specific instances where "the failure of the rule to provide adequate standards has injured drivers."

The Watkins Affidavit does not move the standing needle any further for OOIDA and Mitchell. Dated May 22, 2015, it comes exactly one month before the Rule's effective date (June 22, 2015) and approximately seven months before the implementation of the Revised MER Form. Rule at 22, 790; 22, 804. Thus, the allegations in the Watkins Affidavit—even assuming they are sufficient to prove an injury-in-fact—pre-date their supposed cause. They are not, in other words, "fairly traceable" to the Rule. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 417 (2013) (injuries suffered before enactment of challenged legislation insufficient to prove standing).

OOIDA and Mitchell, of course, could have built their standing argument in other ways. For example, they could have alleged future injury flowing from the Rule and submitted evidence in support of that argument.[4] See Driehaus, 134 S. Ct. at 2341 (noting "future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur" (internal quotation marks omitted)). Or they could have found examples, if any existed, of harm that occurred after the Rule's effective date and stemming from it. In any case, this type

---

[4]In their opening brief, Petitioners alluded to future injury but did not cite any evidence supporting that claim. They also raised a new argument for the first time in their reply brief: procedural standing. We have held previously that standing should be "establish[ed] . . . at the first appropriate point in the review proceeding." OOIDA I 831 F.3d at 968 (second alteration in original) (quoting Sierra Club v. EPA, 292 F.3d 895, 900 (D.C. Cir. 2002)). In Sierra Club, the basis for our rule in OOIDA I, the first appropriate point was defined as the "petitioner's opening brief—and not . . . in reply to the brief of the respondent agency." 292 F.3d at 900; see also Bearden v. Lemon, 475 F.3d 926, 930 (8th Cir. 2007) (noting "that we do not consider arguments raised for the first time in a reply brief" (internal quotation marks omitted)). As a result, we do not reach the merits of their procedural standing claim.

of "speculation does not suffice" for standing purposes, and our role is not to engage in an "ingenious academic exercise in the conceivable." <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 499 (2009) (quoting <u>Lujan</u>, 504 U.S. at 566). Instead, OOIDA and Mitchell "bear[] the burden of persuasion" to prove they have standing, and they have not met their burden here. <u>Iowa League of Cities</u>, 711 F.3d at 869.

III.

For the foregoing reasons, we dismiss the petition.

_____